IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**Rex Allen Petty**                                                                                                                  **Plaintiff**

**v.**                                  **CASE NO. 4:13CV00172 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                                                                **Defendant**

### ORDER REMANDING THIS CASE TO THE COMMISSIONER

Rex Allen Petty seeks judicial review of the denial of his application for disability insurance benefits (DIB) and supplemental security income (SSI). Petty last worked in November 2007 as a stone mason.[1] He first applied for disability benefits on June 13, 2008.[2] An ALJ denied the application on April 7, 2010.[3] Petty reapplied in May 2010.[4] During the hearing for the second application, the ALJ reopened the first application.[5] Because the ALJ reopened the first application, this case considers whether Petty was disabled beginning January 1, 2008, the amended onset date for the first application.[6] Petty bases disability on back, leg, and hip pain; hepatitis C; anxiety; and cirrhosis.[7]

**The Commissioner's decision**. The ALJ determined Petty has severe impairments —

---

[1] SSA record at pp. 52 & 162.

[2] *Id*. at p. 201.

[3] *Id*. at pp. 157 & 201.

[4] *Id*. at p. 151.

[5] *Id*. at p. 44.

[6] *Id*. at pp. 151 & 201.

[7] *Id*. at p. 161.

hepatitis C and cirrhotic liver disease.[8] The ALJ characterized anxiety, depression, and degenerative disc disease of the lumbar spine as "not severe" impairments.[9] After determining Petty does not meet a listed impairment,[10] the ALJ determined that Petty can perform the full range of light work[11] and is unable to perform any past relevant work.[12] The ALJ then applied the Medical-Vocational Guidelines (the Guidelines). Because the Guidelines directed a finding of "not disabled," the ALJ denied the application.[13]

After the Commissioner's Appeals Council denied a request for review,[14] the ALJ's decision became a final decision for judicial review.[15] Petty filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[16]

---

[8]*Id.* at p. 16.

[9]*Id.* at pp. 16-18.

[10]*Id.* at p. 18.

[11]*Id.* at pp. 18 & 23.

[12]*Id.* at pp. 23-24.

[13]*Id.* at p. 24.

[14]*Id.* at p. 1.

[15]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[16]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support

**Eligibility for disability benefits**. To receive DIB, Petty must show he was disabled before his insured status expired.[17] Petty was insured for DIB until June 30, 2008.[18] Petty cannot show he was disabled before that date because a disability determination must be based on medical evidence and there is no medical evidence prior to August 19, 2008. As a result, the ALJ did not err in denying the application for DIB.

The expiration of insured status does not end the Court's review because Petty might qualify for SSI. Because SSI is not payable prior to the date of application, Petty must prove he was disabled as of, or after, applying for SSI.[19] Petty applied for SSI on June 13, 2008,[20] but because there is no medical evidence before August 19, 2008, the earliest Petty can show disability is August 19, 2008. Evidence on that day reflects no disabling impairment.[21]

**Petty's allegations**. Petty contends the ALJ erred at step two of the disability-determination process by characterizing his anxiety, depression, and degenerative disc disease of the lumbar spine as "not severe." He further complains about the ALJ's residual functional capacity (RFC) determination, maintaining that substantial evidence does not support the ALJ's

---

the conclusion that the claimant was not disabled.").

[17]*See* 42 U.S.C. §§ 416(i), 423(c); *Pyland v. Apfel*, 149 F.3d 873, 877 (8th Cir. 1998) ("In order to receive disability insurance benefits, an applicant must establish that she was disabled before the expiration of her insured status.").

[18]SSA record at p. 157.

[19]*Cruse v. Bowen*, 867 F.2d 1183, 1185 (8th Cir. 1989); 20 C.F.R. § 416.335.

[20]SSA record at p. 201.

[21]*Id*. at pp. 212-18 (progress notes from River Valley Medical Center; complaints of abdominal pain).

rejection of postural limitations. According to Petty, no treating or consulting physician opined that he can do the full range of light work. Therefore, he argues that the ALJ erred by applying the Guidelines.

**Severe impairments**. Petty asks the Court to remand this case, in part, because the ALJ did not characterize his anxiety, depression, and degenerative disc disease as severe impairments. This argument provides no basis for relief because step two directs a conclusion of "not disabled" if the claimant fails to prove a severe impairment such that the process weeds out claimants whose abilities to work are not significantly limited.[22] If the claimant meets his step-two burden, there can be no reversible error where the record shows the ALJ considered all of the medical evidence and all of the claimant's impairments.

Petty met his burden to show a severe impairment, so his application proceeded to step three. The record shows the ALJ considered all of the medical evidence and all of Petty's impairments; the characterization of anxiety, depression, and degenerative disc disease as "not severe" evidences the consideration of those impairments. Even if anxiety, depression, and degenerative disc disease are severe impairments, no harm resulted from finding they are "not severe" because Petty proceeded to the third step. The ALJ did not err at step two.

**Residual functional capacity**. Petty's second argument involves the ALJ's RFC determination. Petty maintains that the ALJ's RFC determination is not supported by substantial evidence. Indeed, Petty argues that there is no medical evidence to support the ALJ's conclusion

---

[22]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that the Social Security Act authorizes the Commissioner to weed out applications by claimants who cannot possibly meet the statutory definition of disability at step two of the disability-determination process).

that Petty can engage in a full range of light work with no postural or environmental limitations. This claim is dispositive in this case because the ALJ may not rely on the Guidelines if the claimant has a postural limitation.[23] Instead, the ALJ must consult a vocational expert about the availability of work.

For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the determination that Petty can do the full range of light work.[24] That is, a reasonable mind must accept the evidence as adequate to show Petty has no postural limitations.

A reasonable mind would not accept the evidence as adequate to support the full range of light work because the medical evidence indicates postural limitations. Petty first complained about low back pain during a September 2008 surgery consultation for gall bladder removal.[25] He continued to complain of back pain and hip pain throughout his medical treatment.[26] His treating physician administered Depo-Medrol injections to treat his reported pain.[27] His complaints about "low back pain with radiation of sharp shooting pains intermittently down his right buttock and right leg" led his treating physician to order an MRI of the lumbar spine.[28] [29]

---

[23]*McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) ("The grids take into account only exertional limitations and certain demographic features; they do not account for non-exertional limitations.").

[24]*Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[25]SSA record at p. 229 (complaining about mid-back pain radiating to right groin).

[26]*Id*. at pp. 255, 268, 277, 289-91, 300, 302, 401, 442, & 461.

[27]*Id*. at pp. 290-91 & 461.

[28]*Id*. at p. 289.

[29]Petty suggests the ALJ should have ordered a consultative physical examination to further assess his back, but treatment records and the MRI provide sufficient evidence to

The MRI shows: (1) mild lumbar spondylosis; (2) a broad-based central disc protrusion indenting the central thecal sac and mild narrowing of the right neural foramen at level L4-5; and (3) a right paracentral and left neural foraminal level annular tear, a broad-based disc protrusion in the right paracentral region and focal disc protrusion in the left neural foraminal, and mild narrowing of the neural foramina at level L5-S1.[30] These findings represent degenerative changes that occur as part of the aging process, "affect[ing] everyone to some degree, often without causing any bothersome symptoms."[31] The presence of disc protrusions had little evidentiary value because a damaged or diseased disc does not necessarily mean a person will have pain or another symptom,[32] but spondylosis and foraminal narrowing can cause bothersome symptoms.[33]

---

determine whether Petty experiences disabling back pain. *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); 20 C.F.R. § 416.919a(a) ("If we cannot get the information we need from your medical sources, we may decide to purchase a consultative examination.").

[30]SSA record at. 285-287.

[31]Greg Annussek, 2 The Gale Encyclopedia of Med. 921 (4th ed.).

[32]*See* Dan J. Tennenhouse, 2 Attorneys Med. Deskbook § 24:17 III (4th ed.) ("Protruded disks usually cause no symptoms."); 2 Lawyers' Med. Cyclopedia § 16.9[B] (explaining that a disc "protrusion may or may not compress the spinal cord or nerve roots, causing neurological symptoms and signs").

[33]*See* 2 Lawyers' Med. Cyclopedia § 16.9[C] ("Whether a patient experiences discomfort from the disc disease depends on…canal, and foramen size, as well as the percentage of disc herniated."); Mary Jeanne Krob & Laura Brasseur, 5 Attorneys Textbook of Med. § 15.32 (3d ed.) (explaining that a disc protrusion may be asymptomatic unless there is some degree of spinal stenosis or disc impingement); Julia Barrett, 2 The Gale Encyclopedia of Med. 922 (4th ed.) ("[S]pondylosis refers to common age-related changes in the area of the spine at the back of the neck.…These changes…may go unnoticed, or they may produce problems related to pressure on the spine and associated nerves and blood vessels. This pressure can cause weakness, numbness, and pain in various areas of the body.").

The presence of spondylosis and foraminal narrowing supports Petty's complaints of back pain, but the descriptor "mild" suggests no cause for disabling pain. A reasonable mind would accept this evidence as adequate to support postural limitations, because back pain can limit a person's ability to stoop and crouch.

The medical evidence includes three medical opinions about Petty's RFC. Even though the opinions conflict, they support postural limitations. Two treating physicians completed RFC forms that set forth limitations that, if true, prevent all work.[34] The agency consulting physician completed a similar form and opined that the medical evidence supports light work with the postural limitations of occasional stooping and crouching.[35] The RFC forms created a conflict in the evidence that the ALJ had to resolve in light of objective medical evidence.[36]

Although an ALJ must ordinarily assign "controlling" weight to a treating physician's opinion,[37] the ALJ properly assigned "little" weight to the treating-physician opinions because the reported limitations are not supported by the physicians' treatment notes, the longitudinal medical record, or Petty's reported activities of daily living.[38] The physicians' treatment notes

---

[34]SSA record at pp. 271-73 & 474-77.

[35]*Id.* at pp. 313 & 318.

[36]*Dipple v. Astrue*, 601 F.3d 833, 836 (8th Cir. 2010) ("It was the ALJ's task to resolve the differences between these consultative evaluations in the light of the objective evidence."); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians….The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.").

[37]*Singh v. Apfel,* 222 F.3d 448, 452 (8th Cir. 2000); 20 C.F.R. § 416.927(c)(2).

[38]SSA record at p. 23.

provide little or no support for the limitations reported in the RFC forms.

The ALJ assigned "some" weight to the consulting physician's opinion that Petty can do light work, but rejected the postural limitations. Treatment records reflecting conservative treatment, evidence that Petty's other impairments are stable,[39] and Petty's daily activities, support the assignment of "some" weight in regard to light work. By his own reports, Petty works in the yard — mowing, building fences, and weed eating[40] — takes care of his personal needs and medication,[41] and plays the bass guitar in a band.[42] Petty has taken the same medications since August 2009,[43] indicating that medication generally controls his symptoms.

Although evidence supports the ALJ's resolution of the conflict in regard to light work, the evidence does not support the rejection of the postural limitations. The ALJ stated that "nothing in the record" supports the postural limitations,[44] but Petty's treatment for back pain and the MRI support the postural limitations. Notably, all three medical opinions reported some type of postural limitation. A reasonable mind would not accept the evidence as adequate to show Petty can do a full range of light work because the medical evidence supports limitations in stooping and crouching.

---

[39]*Id*. at p. 268 (feeling much much better), p. 277 (doing better), p. 302 (mental diagnostic evaluation diagnosing marijuana dependence rather than alleged depression and anxiety), & p. 465 (doing well).

[40]*Id*. at p. 180.

[41]*Id*. at pp. 179-180.

[42]*Id*. at p. 182.

[43]*Id*. at p. 268.

[44]*Id*. at p. 23.

Viewed in its totality, the evidence supports light work with postural limitations of occasional stooping and crouching. The postural limitations preclude application of the Guidelines.[45] The ALJ should have questioned a vocational expert about the availability of light work with occasional stooping and crouching.[46] Failure to do so constituted legal error.

**Conclusion**. Substantial evidence does not support the ALJ's rejection of the postural limitations of occasional stooping and crouching. The ALJ erred by applying the Guidelines. For these reasons, the Court REVERSES the Commissioner's decision and REMANDS this case to the Commissioner.

On remand, the ALJ must include the postural limitations in Petty's RFC and then obtain vocational evidence about available work. The ALJ may obtain vocational evidence by conducting a hearing or using written interrogatories. Once those actions are completed, the ALJ shall determine whether Petty is entitled to SSI.

It is so ordered this 28th day of July, 2014.

_____
UNITED STATES MAGISTRATE JUDGE

---

[45] *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995).

[46] *McCoy v. Astrue*, 648 F.3d 605, 613 (8th Cir. 2011) (A "stooping limitation is a nonexertional limitation and, thus, is not part of the grids analysis.").